# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Jesus Verdugo-Carrasco, | Case No. 2:25-cv-02374-CDS-BNW |
| Plaintiff | **Order Granting in Part the Petition for Writ of Habeas Corpus and Denying as Moot the Motion for a Temporary Restraining Order** |
| v. | |
| United States of America, et al., | |
| Defendants | [ECF Nos. 14, 15] |

In December of 2025, petitioner Jesus Verdugo-Carrasco filed an amended petition for writ of habeas corpus. *See* Am. pet. for writ, ECF No. 14. Verdugo-Carrasco requests a writ ordering that the respondents release him, declaring that the respondents have violated his due process rights and the Administrative Procedures Act (APA) by failing to comply with their own regulations, and granting other related relief. *Id.* The respondents filed a response. Resp., ECF No. 21.[1] Respondent Mattos filed a separate joinder. *See* Joinder, ECF No. 22.[2] The petitioner then filed a reply. *See* Reply, ECF No. 23. Also before the court is Verdugo-Carrasco's motion for a temporary restraining order, *see* Mot., ECF No. 15, which is also fully briefed. Resp., ECF No. 20; Reply, ECF No. 24.

I held a hearing on the petition and motion on January 27, 2026. At the conclusion of the hearing, I requested that the respondents file supplemental briefing. *See* Mins., ECF No. 26. The respondents filed their supplemental briefing on January 29, 2026, and the petitioner filed a reply. *See* Suppl. brief, ECF No. 29; Reply, ECF No. 30. Because I find that the respondents have failed to comply with their own regulations concerning re-detention, and that Verdugo-

---

[1] The named respondents are John Mattos, Warden of the Nevada Southern Detention Center; Kerri Ann Quihuis, Field Office Director; Michael Bernacke, Field Director of the Salt Lake City Office; Todd Lyons, Acting Director; Kristi Noem, Secretary of the Department of Homeland Security; Pamela Bondi, Attorney General of the United States.

[2] I grant this joinder.

Carrasco's Fifth Amendment due process rights have been violated, I grant the petition for writ of habeas corpus on his first ground for relief.

I.      Background

Verdugo-Carrasco is a citizen of Mexico who came to the United States in 2012 after the police and Sinaloa Cartel targeted him for his refusal to engage in criminal behavior at the behest of cartel affiliates. ECF No. 14 at 4. On June 8, 2015, Verdugo-Carrasco was taken into custody, sent to the Henderson Detention Center, and placed in immigration proceedings. *Id.* at 5; ECF No. 21 at 1; I-213 Form, Resp'ts' Ex. A, ECF No. 21-2.

The petitioner was issued a notice to appear. ECF No. 21 at 2; Notice, Resp'ts' Ex. B, ECF No. 21-3. On January 13, 2016, the immigration judge denied the petitioner's request for release on bond, concluding that he presented a flight risk. ECF No. 21 at 2; Bond memo, Resp'ts' Ex. C; ECF No. 21-4. The specific reason for the denial was that DHS received an arrest warrant from Interpol stating that the petitioner was wanted for homicide in Mexico. *Id.*

Thereafter, the petitioner applied for asylum and withholding of removal and protection under the Convention Against Torture (CAT). ECF No. 21 at 2. On February 26, 2016, the immigration judge denied the petitioner's application because he did not file his application within one year of his arrival. *Id.* That decision was appealed to the Board of Immigration Appeals (BIA). *Id.*

On August 23, 2016, the BIA affirmed the immigration judge's determination that the petitioner was ineligible for asylum because he did not file his application within one year of his arrival. *Id.*; BIA decision, Resp'ts' Ex. D, ECF No. 21-5. Among other determinations affirmed, the IJ's determination that the petitioner was ineligible for asylum and withholding of removal under both the Act and the CAT because there were grounds to believe that the petitioner had committed a serious nonpolitical crime before arriving to the US. *Id.* However, the BIA found clear error in the immigration judge's assessment on whether the petitioner met his burden of

proof to establish his eligibility for deferral of removal under the CAT. *Id.* As a result, his case was remanded back to immigration court for further proceedings. ECF No. 21-5 at 5.

After remand, on October 7, 2016, the immigration judge granted the petitioner the application for deferral of removal under CAT. Decision, Resp'ts' Ex. E, ECF No. 21-6. That decision held that deferral under CAT: (1) did not confer upon the petitioner a lawful immigration status; (2) would not necessarily result in his release from custody; (3) and that the order was subject to termination and review if the immigration judge concludes at a subsequent hearing that it is not likely he would be tortured in Mexico. ECF No. 21 at 2–3; Resp'ts' Ex. E, ECF No. 21-6. That order was effective only until termination. *See. id.* The petitioner was released from custody around October 14, 2016. ECF No. 14 at 2, 5. He was also given a work permit. *Id.*

As alleged in the petition, on November 5, 2025, the petitioner was on his way to work with his 18-year-old son when unmarked ICE vehicles surrounded him. *Id.* at 2.[3] Armed ICE officers then exited their vehicles and pointed their guns at Verdugo-Carrasco. *Id.* He was arrested, taken into ICE custody, and was initially not informed of the reason for his arrest. Later that day, he was informed he had been taken into custody because he had a pending order of removal. *Id.* at 5. When the petitioner was initially interviewed, he was informed that ICE was going to try to send him to Guatemala or El Salvador. *Id.*

In his amended petition, the petitioner brings the following claims for relief: (1) ICE's failure to comply with its own regulations concerning the re-detention of individuals on orders of supervision violates the his Fifth Amendment due process rights and the APA; (2) his continued indefinite detention also violates his Fifth Amendment right to due process because his removal is not reasonably foreseeable; (3) his continued detention violates the INA, 8 U.S.C. § 1231(a)(b); (4) ICE's policy of removing noncitizens to a third country with no notice or

---

[3] As provided by the respondents, on November 5, 2025, a warrant of arrest was issued for the petitioner for entering the US without inspection by ICE. ECF No. 21 at 3; I-213 Form and Warrant, Resp'ts' Ex. F; ECF No. 21-7.

opportunity to seek fear-based protection violates his Fifth Amendment right to due process and constitutes arbitrary and capricious agency action in violation of the APA, 5 U.S.C. § 706; and (5) his detention in immigration custody pursuant to recent ICE policy regarding third country removal also violates his due process set forth in Fifth Amendment. *See generally id.*

## II.    Legal standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.    Discussion

The petitioner asserts that 8 C.F.R. § 241.13(i) applies to persons released after providing good reason to believe that they will not be removed in the reasonably foreseeable future (the petitioner falls into this category). ECF No. 14 at 16. The petitioner asserts that he was not told that he was returned to custody because a condition was violated nor that there had been no change of circumstances to justify re-detaining him. *Id.* at 17. Further, the petitioner asserts that he has not received an interview as required by the regulation, and that no one from ICE has invited him to contest the revocation of his order of supervision. *Id.*

In opposition, the respondents did not directly address the petitioner's argument regarding a violation of the 8 C.F.R. § 241.13 regulation. *See generally* ECF No. 21. Rather, they conclusively argue that ICE did not violate its own regulations, and there are no Fifth

Amendment or APA violations. *Id.* at 4. Moreover, they argue that the petitioner is lawfully detained under 8 U.S.C. § 1231(a)(6), as he has been issued a final order of removal and the time for mandatory removal has not passed under § 1231(a)(1)(A). *Id.*

During the January 27, 2026 hearing, the respondents raised to the court for the first time that the petitioner did not have an order of supervision (OSUP) when he was released from detention in 2016, so 8 C.F.R. § 241.13 simply does not apply to him, and in turn, there is no violation of petitioner's Fifth Amendment rights, nor of the APA. As a result of this new representation, I requested additional briefing, specifically to confirm that contrary to 8 C.F.R. § 241.13, petitioner had been released without an order of supervision, *see* ECF No. 26, to which the respondents filed supplemental briefing, *see* ECF No. 29. In support of their argument, the respondents submitted a declaration from Tyler Adams, the Supervisory Detention and Deportation Officer with the DHS. *See* Resp'ts Ex. A, ECF No. 29-1 at 1–3. The declaration states that when the petitioner was released from the department's custody on November 8, 2016, he was not subject to an OSUP, nor were any conditions of supervision imposed upon him. *Id.* at 3, ¶ 5. However, the petitioner has been granted a work authorization permit seven times since his release. *Id.* at ¶ 6.

In reply, the petitioner argues that regardless of whether there was an OSUP, ICE was still required to comply with its regulations with the petitioner's re-detention, even if it did not think the petitioner warranted formal OSUP monitoring in 2016 when he was released. ECF No. 30 at 2. The petitioner further argues that ICE's 2016 release of Verdugo-Carrasco was governed by the regulations set out in 8 C.F.R. § 241.13 because that section controls the release of individuals for whom ICE has determined there is no significant likelihood of removal in the reasonably foreseeable future. I agree.

The detention and release of noncitizens who are subject to a final order of removal are governed by 8 U.S.C. § 1231. Under that statute, "when [a noncitizen] is ordered removed, the

Attorney General shall remove the [noncitizen] from the United States within a period of 90 days," also known as the "removal period." 8 U.S.C § 1231(a)(1)(A). "If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, **shall be** under regulations prescribed by the Attorney General." *Id.* at § 1231(a)(3) (emphasis added). Those regulations, which govern release, also govern revocation of release of noncitizens subject to a final order of removal. *See Tan-Gutierrez v. Noem*, 2026 U.S. Dist. LEXIS 14096, at *7 (S.D. Cal. Jan. 26, 2026) (discussing 8 C.F.R. §§ 241.4 and 241.13.). These regulations permit revocation of release only if the appropriate official "determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future" and makes that finding "on account of changed circumstances." § 241.13(i)(2). And "[u]pon revocation," the noncitizen "will be notified of the reasons for revocation of his or her release or parole" and will be given "an initial informal interview promptly after his or her return to Service custody" to "respond to the reasons for revocation stated in the notification." *Id.* at § 241.4(l)(1); § 241.13(i)(3) (emphasis added).

Here, the petitioner was previously detained in 2016, and on October 7, 2016, the immigration judge granted the petitioner's application for deferral of removal under CAT. ECF No. 21 at 2–3; Resp'ts' Ex. E, ECF No. 21-6. While the respondents argue that 8 C.F.R. § 241.13 does not govern because there was no OSUP issued, this argument is unpersuasive and is a red herring. The respondents themselves state in their opposition that the petitioner is detained pursuant to § 1231. *See* ECF No. 21 at 4. Thus, if the petitioner is detained under § 1231, then the regulations that apply are set forth in 8 C.F.R. § 241.13. The record is clear that no such procedures followed, ostensibly because there was no OSUP in place. This is a troubling attempt by respondents to use their own failure to impose an OSUP as a shield and a sword. It was the respondents' responsibility to place the petitioner on an OSUP. They were clearly aware of the requirements under § 1231 because they granted the petitioner work authorizations seven

different times since 2016 in accordance with 8 C.F.R. § 1231(a)(7).[4] The respondents were likewise required to comply with 8 C.F.R. § 1231 when re-detaining the petitioner. The record is clear that they failed to do so because the petitioner was not given an opportunity to contest the reasons for the revocation of his release. *Kerota v. Noem*, 2026 U.S. Dist. LEXIS 12954, at *10 (S.D. Cal. Jan. 23, 2026); *Grigorian v. Bondi*, 2025 WL 2604573, at *10 (S.D. Fla. Sept. 9, 2025) ("The failure to provide [the petitioner] with an informal interview promptly after his detention or **to otherwise provide a *meaningful opportunity to contest* the reasons for revocation violates both ICE's own regulations and the Fifth Amendment Due Process Clause.** This compels [the petitioner's] release.") (emphasis added). The heart of the issue here is not whether there was an actual OSUP given to the petitioner, but rather, whether after his release, if there were proper procedures followed pursuant to C.F.R. § 241.13 to re-detain the petitioner. Because the respondents failed to comply with its own regulations, I find petitioner's Fifth Amendment due process rights were violated, so I grant the petition on the first claim.

Because I grant the relief under the § 2241 petition for the reasons set forth above, I decline to address other claims and other requested relief in the petition.

**IV.    Conclusion**

IT IS ORDERED the Verdugo-Carrasco's petition for writ of habeas corpus **[ECF No. 14] is GRANTED in part as set forth in this order.**

IT IS FURTHER ORDERED that the Verdugo-Carrasco's motion for temporary restraining order **[ECF No. 15] is DENIED is moot.**

---

[4] 8 C.F.R. § 1231(a)(7) provides no "alien is ordered removed shall be eligible to receive authorization to be employed in the United States unless the Attorney General makes a specific finding" that "(A) the alien cannot be removed due to the refusal of all countries designated by the alien or under this section to receive the alien, or (B) the removal of the alien is otherwise impracticable or contrary to the public interest."

IT IS FURTHER ORDERED that the respondents are ordered to release Verdugo-Carrasco within twenty-four hours, by 5:00 p.m., February 3, 2026. The petitioner is to be released from custody and placed on an order of supervision consistent with 8 C.F.R. § 241.13(3).

Dated: February 2, 2026

_____
Cristina D. Silva
United States District Judge

8